UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH WINE, | ) |
|        Plaintiff, | ) |
| v. | ) No. 4: 20 CV 1721 DDN |
| RICHARD COMER and CRETE CARRIER CORPORATION, | ) |
|        Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of defendants Richard Comer and Crete Carrier Corporation to limit the testimony of certain of plaintiff Joseph Wine's experts. (Docs. 49, 51, 53.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

## BACKGROUND

This case arises out of a vehicle collision that occurred on June 7, 2020, between plaintiff and defendant Comer, who was operating a tractor-trailer in service of defendant Crete. (Doc. 7 at ¶¶ 9, 10.) Plaintiff alleges that defendant Comer encroached upon plaintiff's lane of traffic, causing the front of his vehicle to strike the rear of the tractor-trailer. (*Id*. at ¶¶ 13-14.) Plaintiff further alleges that, as a result of the collision, he suffered severe injuries to his head and back, other physical pain, and emotional suffering. (*Id*. at ¶ 15.)

Defendants now move to limit the testimony of three of plaintiff's experts: Mariusz Ziejewski, Ph.D., an expert in mechanical engineering, biomechanics, and vehicle dynamics; Stan Smith, Ph.D., a forensic economist; and Roger Huckfeldt, M.D., a life care planner. (Docs. 49, 51, 53.)

## **GENERAL LEGAL PRINCIPLES**

Federal Rule of Evidence 702 allows a witness who qualifies as an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion or otherwise about scientific, technical, or other specialized knowledge. Fed. R. Evid. 702. Expert opinion testimony must pass threshold standards of reliability and relevance. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The inquiry of Rule 702 is a flexible one, *id.* at 594 n. 12, but the *Daubert* court identified five important considerations relevant in determining whether these standards are met.

First, the evidence must be scientific, technical, or otherwise specialized. Fed. R. Evid. 702. Opinion evidence is "scientific" if it is grounded in the methods and procedures of science. *Daubert*, 509 U.S. at 589-90. Second, the evidence must be "knowledge" and not mere "subjective belief or unsupported speculation." *Id*. at 590. This means that the subject of scientific testimony must be derived by the scientific method. *Id.* Third, Rule 702 requires that the evidence be relevant in the sense that it is helpful to the trier of fact to decide a fact at issue. *Id.* at 591, 592. Fourth, if the expert opinion is based on evidence that is inadmissible, the opinion may be admitted only if this evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." *Id.* at 595 (citing Fed. R. Evid. 703). Fifth, the trial court must determine whether the expert's reasoning and methodology are reliable, *i.e.*, (a) whether they can be and have been tested; (b) whether they have been submitted to peer review and publication; (c) whether the asserted scientific technique has a known or potential rate of error; and (d) whether the asserted technique is generally accepted in the scientific community. *Id.* at 593-94.

These standards can be summarized in Rule 702's post-*Daubert* amendment, which requires expert evidence be (a) such that it "will help the trier of fact to understand the evidence or to determine a fact in issue;" (b) "based on sufficient facts or data;" (c) "the product of reliable principles and methods;" and (d) an application of "the principles and methods to the facts of the case." Fed. R. Evid. 702 (2011). The Eighth Circuit has identified further factors that are relevant in determining reliability: the extent to which an

opinion was developed for litigation as opposed to naturally flowing from an expert's research and the extent to which the proposed expert eliminated alternative explanations in reaching his or her conclusions.  *See Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008) (citing *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681 (8th Cir. 2001).

The proponent of the expert evidence must show that it is reliable and would be helpful to the finder of fact, and that the expert is qualified to be a witness under Rule 702. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory-committee's note.  The expert must explain how he developed his opinions.  Fed. R. Evid. 702 advisory-committee's note.  An expert's opinion is subject to being rejected if it is substantially based upon the expert's subjective belief or unsupported speculation. *Estate of Claison L. Groff v. Aquila, Inc.*, 2007 WL 4644707, at *9 (S.D. Iowa 2007) (*e.g.,* ruling expert opinion not admissible as unsupported and speculative regarding size of natural gas leak and that the hole through which the gas escaped "could have or must have closed during shipment of the furnace"). While the district court focuses on an expert's principles and methodology, expert conclusions may also factor into the admissibility calculus.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  A court may conclude that there is "simply too great an analytical gap" between a proffered opinion and the data in a case, and it is within the court's discretion to conclude that data relied upon is not sufficient to support an expert's conclusions. *Id.*  A court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.*

## DISCUSSION

### *Mariusz Ziejewski, Ph.D.*

Defendants challenge several of the opinions provided in the report of Dr. Ziejewski.  First, defendants argue that Dr. Ziejewski's Opinion No. 4 that the crash scenario was complex relies on inapplicable research. (Doc. 50 at 4.)  Similarly, they assert that Dr. Ziejewski's Opinion No. 5 regarding plaintiff's time to avoid the collision is based on a canceled and inapplicable standard. (*Id*. at 5-6.)  They argue that he failed to complete a dynamics analysis with respect to plaintiff or the accident when forming his Opinion No.

8 regarding plaintiff's body motion during the accident, so his opinion is speculative.  (*Id*. at 7.)  Lastly, they argue that his Opinions Nos. 9 and 10, which state that the force of the accident was sufficient to cause plaintiff's brain injury, lack factual foundation, rely on inapplicable methodology, and lack scientific support.  (*Id*. at 8.)

In response, plaintiff argues that Dr. Ziejewski's Opinion No. 4 that the crash scenario was complex is based on generally accepted criteria to which Dr. Ziejewski cites.  (Doc. 56 at 9.)  Plaintiff similarly asserts that Dr. Ziejewski's Opinion No. 5 regarding lateral acceleration is based on generally acceptable standards, and the standard that he cites was cancelled for administrative, not reliability, reasons.  (*Id*. at 11-12.)  Plaintiff contends that Dr. Ziejewski's Opinion No. 8 regarding body motion during the accident is based on accepted methodology and analysis.  (*Id*. at 14.)  Lastly, plaintiff argues that Dr. Ziejewski's Opinions Nos. 9 and 10 regarding the severity of the accident and cause of plaintiff's head injury are supported by the evidence in the medical records.  (*Id*. at 17.)

In reply, defendants argue that Dr. Ziejewski failed to apply the cited research regarding complex reaction scenarios to the facts of the case in forming Opinion No. 4.  (Doc. 60 at 1.)  They contend that Dr. Ziejewski's reliance in Opinion No. 5 on a canceled standard cannot be cured by plaintiff now citing a superseding standard, as Dr. Ziejewski did not cite this standard in his report, and defendants did not have the opportunity to question him about the standard.  (*Id*. at 2.)  Defendants argue that Dr. Ziejewski failed to analyze the impact of the collision on plaintiff in Opinion No. 8, instead focusing his analysis on the impact to the vehicle.  (*Id*. at 3.)  Lastly, they contend that Dr. Ziejewski's conclusions in Opinions No. 9 and 10 that plaintiff suffered a head contusion are without foundation.  (*Id*. at 4.)

Dr. Ziejewski is a professor emeritus in the Department of Mechanical Engineering at North Dakota State University, where he formerly directed the Impact Biomechanics Laboratory and Automotive Systems Laboratory.  (Doc. 50-1 at 36.)  He is also a clinical adjunct associate professor in the Department of Clinical Neuroscience at the University of North Dakota School of Medicine.  (*Id*.)  He has published extensively on brain injury and biomechanical responses to impact.  (*Id*. at 47-52.)  Over the past five years, he has

given deposition and/or trial testimony in over 150 state and federal court cases across the United States.  (*Id*. at 61-64.)  The Court finds that Dr. Ziejewski is a qualified expert in the field of biomechanics and vehicle dynamics.

The Court concludes that Dr. Ziejewski did not apply the cited complex reaction principle to the facts of the case when producing his Opinion No. 4.  In his report, Dr. Ziejewski discusses the reasonable expectations of a driver, opining that plaintiff had the right to assume that defendant Comer would yield to him.  (Doc. 50-1 at 14.)  He then opines that this case involved a "complex reaction scenario," in which reaction time may be as high as three seconds or more.  (*Id*.)  The cited definition of "complex reaction" is "a reaction involving a decision, such as when the driver has to decide whether to step on the accelerator or the brake pedal."  (*Id*.)  Even if the Court construes the latter part of the definition as strictly illustrative of a type of decision in a complex reaction scenario, Dr. Ziejewski does not identify any decision made by or available to plaintiff.  Rather, he discusses plaintiff's reasonable expectations of fellow drivers.  The Court therefore concludes that Dr. Ziejewski failed to apply the complex reaction principle to the facts of the case, and it excludes his Opinion No. 4.

The Court also concludes that Dr. Ziejewski did not rely on current generally accepted principles when developing Opinion No. 5.  Plaintiff does not dispute that the lateral acceleration standard relied on by Dr. Ziejewski, SAE J2179, was canceled by the Society of Automotive Engineers ("SAE") in September 2000.  (Doc. 50 at 6; Doc. 56 at 12.)  Plaintiff argues that the standard adopted by the International Organization for Standardization, ISO 14791, is substantially similar, and the SAE canceled SAE 2179 to avoid overlap.  As defendants point out, though, "substantially similar" does not mean "identical."  Plaintiff concedes that the application of ISO 14791 changes the lateral acceleration calculation.  Whether the standard cited by Dr. Ziejewski is more or less conservative than the superseding one does not change the fact that his opinion relies on a standard that is no longer generally accepted.  The Court therefore excludes Dr. Ziejewski's Opinion No. 5.

Dr. Ziejewski's Opinion No. 8, on the other hand, is sufficiently supported by reliable principles and is admissible. He completed an impact analysis based on the structural damage to plaintiff's vehicle, the available frontal stiffness characteristics, and the principal direction of force. (Doc. 50-1 at 15.) Based on the impact analysis, he opines that plaintiff moved forward and to the right during the collision. (*Id*. at 17.) He supports his opinion by citing to a National Highway Traffic Safety Administration ("NHTSA") test that showed that the upper body tends to roll out of the seatbelt when the direction of impact is opposite the geometry of the seatbelt. (*Id*. at 16-17.) Though he did not perform his own calculations, and the NHTSA test was performed using a different direction of force and severity of impact, Dr. Ziejewski employed a reliable methodology in forming his opinion. The Court does not exclude Opinion No. 8.

The Court also concludes that Opinions Nos. 9 and 10 are admissible. Defendants argue that Dr. Ziejewski's opinion regarding brain injury lacks a foundation in plaintiff's medical records. (Doc. 50 at 8.) Defendants' challenge to the factual bases of Dr. Ziejewski's opinions go to the credibility of his testimony, not its admissibility. *See Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). Additionally, Dr. Ziejewski's use of the Gadd Paper to determine whether the collision could have caused plaintiff's brain injury is admissible. The Court concludes that Dr. Ziejewski's application of the Gadd Paper is relevant and reliable and that his opinion may be helpful to the trier of fact.

The Court finds that defendants' reliance on *Gillum v. L & J Enterprises, Inc.*, 29 P.3d 266, 270 (Alaska 2001) is misplaced. In that case, the court determined that the special master did not err in not relying on Dr. Ziejewski's testimony because he based his conclusions on an incorrect location for the plaintiff's head strike, as Dr. Ziejewski's opinion conflicted with the plaintiff's own testimony. *Id*. Here, defendants dispute whether the medical record contains evidence of a head contusion, but plaintiff's testimony has not conflicted with that of Dr. Ziejewski. Additionally, whereas the court in *Gillum* reviewed the special master's decision for clear error, this Court's role at this stage is to

serve as a gatekeeper for relevance and reliability. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The Court does not exclude Opinions 9 and 10.

### Roger Huckfeldt, M.D.

Defendants seek to limit the testimony of Robert Huckfeldt, M.D., as to the following of plaintiff's alleged future care needs: psychiatric care; trigger point injections and out-of-office facility charges associated with the injections; physical therapy evaluations and sessions; psychotherapy; homemaker assistance; facility maintenance assistance; and personal assistant services. (Doc. 54 at 7-9.) Defendants further argue that the Court should exclude Dr. Huckfeldt's opinion that plaintiff will not reenter the workforce. (*Id*. at 9.) Defendants contend that Dr. Huckfeldt's opinions are speculative, not within his qualifications, and not supported by the evidence because plaintiff's treating physicians have not opined as to his ability to work and have not placed any physical or duty restrictions on him. (*Id*. at 7-9.) In support, defendants cite *Queen v. W.I.C., Inc.,* No. 14-CV-519-DRH-SCW, 2017 WL 3872180 (S.D. Ill. Sept. 5, 2017). In that case, the court excluded the plaintiff's proposed life care planner because his recommendations were unsupported by the medical records, he failed to explain the basis for his additional treatment recommendations and valuations, and his methodology was not reliable. *Id*. at *4.

Plaintiff argues that, due to his extensive experience as a medical doctor, including with long-term rehabilitation of patients, Dr. Huckfeldt is qualified to render an opinion as to plaintiff's future mental health needs. (Doc. 58 at 10.) Plaintiff further argues that Dr. Huckfeldt's opinions regarding plaintiff's mental health needs were based on evidence in the record that, after the accident, plaintiff suffered from depression, chronic pain, and thoughts of self-harm and/or harm to others. (*Id*. at 11.) He contends that Dr. Huckfeldt's opinion regarding trigger point injections and the associated costs is supported by the medical records, as plaintiff has received at least a dozen injections since the accident. (*Id*. at 13.) Regarding physical therapy, plaintiff argues that Dr. Huckfeldt routinely prescribed the treatment to his patients, particularly to patients in long-term rehabilitation, and that his recommendation was based on plaintiff's neck muscle spasms and neck pain. (*Id*. at 14.)

Plaintiff asserts that defendants' argument regarding the factual basis for Dr. Huckfeldt's recommendation for home care and living assistance go to the weight, not the admissibility, of the evidence. (*Id*. at 15.) Lastly, plaintiff argues that Dr. Huckfeldt's opinion that plaintiff cannot operate a commercial vehicle is based on his expertise and review of the medical records, as well as the testimony of plaintiff. (*Id*. at 16-17.)

Dr. Huckfeldt is a physician and life care planner. (Doc. 58-5 at 2.) Prior to obtaining certification in life care planning, Dr. Huckfeldt practiced for 22 years as a general surgeon with a specialty in trauma management. (*Id*. at 1; Doc. 54-2 at 4.) He has testified in over 200 cases. (Doc. 58-6.) Defendants do not contest Dr. Huckfeldt's qualifications as a life care planner, though they do dispute his qualifications to recommend certain treatments. The Court finds that Dr. Huckfeldt qualifies as a life care planning expert.

In *Queen v. W.I.C.*, the court excluded the testimony of the plaintiff's life care planner because he did not draft the initial plan, explain or validate his methodology, or discuss the plan with the plaintiff's treating physicians to validate his proposed treatments. 2017 WL 3872180 at *5. The court also found that the life care planner's lack of experience related to his proposed treatments, which exceeded the recommendations of the plaintiff's treating physicians, made his opinion unreliable. *Id*.

Here, the Court concludes that Dr. Huckfeldt's opinion is reliable and may be helpful to the trier of fact. Dr. Huckfeldt's methodology includes assessing whether the client has long term needs; reviewing the client's medical records; interviewing the client; and creating the life care plan. (Doc. 54-2 at 11.) In addition to the recommendations and prior treatment contained in the medical records, such as trigger point injections, Dr. Huckfeldt opined, based on his experience in trauma management, that plaintiff will require physical therapy, mental health services, and other home care supports. Unlike in *Queen v. W.I.C.*, Dr. Huckfeldt drafted the life care plan himself and explained his methodology. Defendants' challenge to the factual bases of Dr. Huckfeldt's opinions go to the credibility of his testimony, not its admissibility. *See Bonner*, 259 F.3d at 929.

Where defendants dispute the factual basis Dr. Huckfeldt's opinions, they can address those disputes in cross-examination.

### *Stan Smith, Ph.D.*

Defendants seek to limit the testimony of plaintiff's expert economist, Stan Smith, Ph.D. They argue that Dr. Smith's lost wage and earning capacity calculations should be excluded because they are based on an improper assumption that plaintiff will never work again, which is not supported by plaintiff's medical providers or other experts. (Doc. 52 at 5.) They further assert that Dr. Smith's calculations are improper and should be excluded because, in performing his calculations, he used general statistical wage data for truck drivers in Texas and disregarded plaintiff's actual wage and earnings history as a self-employed truck driver in West Virginia. (*Id*. at 8.) Lastly, they argue that Dr. Smith's present value opinions and calculations regarding items included in Dr. Huckfeldt's life care plan should be excluded because Dr. Huckfeldt did not have a sufficient and reliable basis for including the items in his Life Care Plan. (*Id*. at 9.)

Plaintiff responds that Dr. Smith's opinion regarding lost earning capacity is valid because it is based on a question of fact: whether plaintiff sustained a disabling injury. (Doc. 57 at 8.) If the jury finds that the accident rendered plaintiff disabled such that he cannot return to work, then it can rely on Dr. Smith's opinion regarding earning capacity. (*Id*. at 8-9.) Plaintiff further argues that Dr. Smith's use of wage data for truck drivers in Texas is appropriate because plaintiff primarily worked in Texas at the time that he was injured. (*Id*. at 11.) Plaintiff also contends that Dr. Smith properly considered his earning capacity, which is more reliably reflected by general wage statistics than his net taxable income due to his status as a self-employed driver and small business owner. (*Id*. at 12.) Lastly, in response to defendants' argument that the items from Dr. Huckfeldt's life care plan should be excluded from Dr. Smith's testimony, plaintiff incorporates by reference its arguments in support of Dr. Huckfeldt's opinion. (*Id*. at 13.)

Dr. Smith holds a Ph.D. in Economics from the University of Chicago and has more than 40 years of experience in economic and financial consulting. (Doc. 57-5 at 1-2.) He has provided testimony in courts across the country in more than 600 cases. (Doc. 57-6.)

Defendants do not dispute Dr. Smith's qualifications.  The Court concludes that Dr. Smith is a qualified expert in the field of forensic economics.

"Attacks on the foundation for an expert's opinion, as well as the expert's conclusions, go to the weight rather than the admissibility of the expert's testimony." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) (citations omitted). The foundation for Dr. Smith's opinion regarding lost wage and earning capacity is that plaintiff has been unable to work since the collision and is not sure if he will be able to work in the future.  (Doc. 52-1 at 3.)  Whether plaintiff is capable of reentering the workforce is a foundation for Dr. Smith's opinion and a question of fact, which goes to the weight of his testimony, not to its admissibility.

Defendants do not challenge the principles and methods by which Dr. Smith derived his lost wage and earning capacity figures.  Rather, they argue that his reasoning was flawed when he inappropriately used wage data from Texas and disregarded plaintiff's net earnings as reflected by his 2019 and 2020 tax filings.  He performed two sets of calculations: the first set his earnings at $47,430 per year, the mean wage for truck drivers in Texas in 2020, and the second set his earnings at $55,560 per year, based on the 75th percentile of truck drivers in Texas in 2020.  (Doc. 52-1 at 4.)  The Court concludes that his reasoning for using wage data from Texas is sound, as plaintiff asserts that he was primarily working in Texas at the time of the collision and contracted with a Texas company.  (*Id*. at 3.)  The Court further concludes that Dr. Smith provided sound reasoning for relying on the Texas wage data rather than plaintiff's net income, as indicated on his 2019 tax return.  Because plaintiff was self-employed, he could deduct certain expenses, like his cell phone, that were both a business and personal expense.  (*Id*. at 4.)

Lastly, as discussed above, the Court will not limit or exclude Dr. Huckfeldt's testimony.  Dr. Smith's calculations regarding Dr. Huckfeldt's recommendations will therefore not be excluded.  The Court concludes that Dr. Smith's reasoning was reliable, and it will not exclude or limit his testimony.

## **CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that defendants' motion to exclude the testimony of plaintiff's expert Mariusz Ziejewski **(Doc. 49) is sustained in part and denied in part**, in that Dr. Ziejewski may testify as to Opinions Nos. 8, 9, and 10, but not Nos. 4 and 5.

**IT IS FURTHER ORDERED** that defendants' motion to exclude the testimony of plaintiff's expert Stan Smith **(Doc. 51) is denied**.

**IT IS FURTHER ORDERED** that defendants' motion to exclude the testimony of plaintiff's expert Roger Huckfeldt **(Doc. 53) is denied**.

                /s/ David D. Noce  
      **UNITED STATES MAGISTRATE JUDGE**

Signed on March 9, 2022.